IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:13-CV-165-D

| | |
|---|---|
| RUSSELL EVANDON PULLEY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. ) | **MEMORANDUM AND RECOMMENDATION** |

In this action, plaintiff Russell Evandon Pulley ("plaintiff") challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") on the grounds that he is not disabled. The case is before the court on the respective parties' motions for judgment on the pleadings. (D.E. 20, 25). Each party filed a memorandum in support of its motion (D.E. 21, 26). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* 7 Apr. 2014 Minute Entry). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

I.  BACKGROUND

   A.  **Case History**

Plaintiff filed an application for DIB on 2 March 2010, alleging a disability onset date of 8 April 2009. Transcript of Proceedings ("Tr.") 12. The application was denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 12. On 17 January 2012, a hearing was held before an Administrative Law Judge ("ALJ"), at which plaintiff, his mother,

and a vocational expert testified. Tr. 23-64. In a written decision dated 24 April 2012, the ALJ found that plaintiff was not disabled and therefore not entitled to DIB. Tr. 12-22. Plaintiff timely requested review by the Appeals Council. Tr. 7-8. The Appeals Council admitted additional evidence (Tr. 5-6, 417-19) and denied the request for review on 15 May 2013 (Tr. 1-4). At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.981. Plaintiff commenced this proceeding for judicial review on 31 August 2012, pursuant to 42 U.S.C. § 405(g). (*See In Forma Pauperis* Mot. (D.E. 3); Order Denying Mot. (D.E. 4); Compl. (D.E. 5)).

B.  **Standards for Disability**

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["listings"] . . . and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 404.1520(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [a claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

### C. Findings of the ALJ

Plaintiff was 36 years old on the alleged onset date of disability and 39 years old on the date of the administrative hearing. Tr. 21 ¶ 7. He has a high school education. *See* Tr. 21 ¶ 8; 30 (plaintiff's testimony that he has a GED). His past relevant work includes employment as manager of a small chain of a retail stores. Tr. 17 ¶ 5; 20 ¶ 6. While in that job, he was robbed and duct-taped, resulting in mental impairments underlying his claim for DIB. *See* Tr., *e.g.*, 15 ¶ 4; 16 ¶ 5; 17 ¶ 5.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since his alleged onset of disability. Tr. 14 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that are severe within the meaning of the Regulations: posttraumatic stress disorder ("PTSD"), bipolar disorder, and marijuana dependence. Tr. 14 ¶ 3. At step three, the ALJ found that plaintiff's impairments did not meet or medically equal any of the listings, including specifically Listing 12.04 for affective disorders and Listing 12.06 for anxiety-related disorders. Tr. 14 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform a full range of work at all exertional levels, subject to the following limitations:

> [He] has the ability to sustain sufficient attention to complete simple routine tasks for a two-hour period[1] at a non-production pace, complete a normal workweek, make simple-work-related decisions, and relate appropriately if interpersonal demands are limited and there is only casual public contact; furthermore, the claimant can avoid hazards, he should be able to adapt to changes associated with the performance of simple tasks, and function adequately in a stable work assignment in a position that is not highly production oriented or socially demanding.

---

[1] The court understands the two-hour limitation to signify that plaintiff can work for two hours before requiring a break, not that he is limited to two hours of work per day, which would be inconsistent with the finding, among others, that he can complete a normal workweek. *See Scercy v. Colvin*, No. 1:10CV 296, 2013 WL 1736596, at *9 & n.13 (M.D.N.C. 9 Apr. 2013), *mem. opin. and recommendation adopted by* J. (20 Aug. 2013) (D.E. 15).

Tr. 16 ¶ 5.

Based on this RFC, the ALJ found at step four that plaintiff was not capable of performing any of his past relevant work. Tr. 20 ¶ 6. At step five, the ALJ accepted the testimony of a vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of hand packager, mail clerk, and cleaner, housekeeping. Tr. 21-22 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 22 ¶ 11.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent

evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *See, e.g., Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir.1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1–2.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### B.  Plaintiff's Contentions

Plaintiff contends that the ALJ erred by not finding that he met or medically equaled Listings 12.04 and 12.06, and by not properly assessing plaintiff's credibility. Plaintiff's contentions are addressed in turn below.

### C. ALJ's Determination regarding Listings 12.04 and 12.06

#### 1. Listings Generally

The listings consist of impairments, organized by major body systems, that are deemed sufficiently severe to prevent a person from doing any gainful activity. 20 C.F.R. § 404.1525(a). Therefore, if a claimant's impairments meet or medically equal a listing, that fact alone establishes that the claimant is disabled. *Id.* § 404.1520(d). An impairment meets a listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); Soc. Sec. R. 83-19, 1983 WL 31248, at *2 (1983). The burden of demonstrating that an impairment meets a listing rests on the claimant. *Hall v. Harris*, 658 F. 2d 260, 264 (4th Cir. 1981).

As indicated, even if an impairment does not meet the listing criteria, it can still be deemed to satisfy the listing if the impairment medically equals the criteria. 20 C.F.R. § 404.1525(c)(5). To establish such medical equivalence, a claimant must present medical findings equal in severity to all the criteria for that listing. *Sullivan*, 493 U.S. at 531; 20 C.F.R. § 404.1526(a) (medical findings must be at least equal in severity and duration to the listed criteria). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531.

"[W]hen an ALJ finds that a claimant has a severe impairment and the record contains evidence of related 'symptoms [that] appear to correspond to some or all of the requirements of [a listing, the ALJ must] . . . explain the reasons for the determination that [the claimant's severe impairment] did not meet or equal a listed impairment.'" *Jones ex rel. B.J. v. Astrue*, No. 1:09CV45, 2012 WL 1267875, at *2 (M.D.N.C. 16 Apr. 2012) (quoting *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)), *rep. and recommendation adopted by* Order (22 May 2012)

(D.E. 19); *Money v. Astrue*, No. 1:08cv895, 2011 WL 3841972, at *8 (M.D.N.C. 26 Aug. 2011) ("The ALJ also may not include a conclusory statement that the claimant does not have an impairment or combination of impairments that meets a listed impairment." (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989))); *cf. Kelly v. Astrue*, No. 5:08-CV-289-FL, 2009 WL 1346241, at *5 (E.D.N.C. 12 May 2009) ("[T]he ALJ is only required to explicitly identify and discuss relevant listings of impairments where there is 'ample evidence in the record to support a determination' that an impairment meets or medically equals a listing." (citations omitted)).

### 2. Listings 12.04 and 12.06

Listing 12.04 for affective disorders is satisfied if an individual meets or medically equals the A and B criteria, or if he meets or medically equals the C criteria. Listing 12.04. Plaintiff argues that he meets or medically equals the A and B criteria. With respect to the A criteria, plaintiff argues that he has medically documented persistence, either continuous or intermittent, of depressive syndrome characterized by sleep disturbance, feelings of guilt or worthlessness, difficulty concentrating or thinking, thoughts of suicide, and hallucinations. *See* Listing 12.04A1c, f, g, h, i. As to the B criteria, plaintiff argues that he has marked difficulties in maintaining social functioning and marked difficulties in maintaining concentration, persistence, or pace.[2] *See* Listing 12.04B2, 3. Plaintiff does not allege that he satisfies the C criteria, which require a chronic affective disorder of two years' duration with certain specified characteristics, and they therefore are not at issue in this appeal. *See* Listing 12.0C.

---

[2] The B criteria are met by having at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. Listings 12.04B, 12.06B. For the first three functional areas, the ratings, in order of increasing level of limitation, are none, mild, moderate, marked, and extreme. *See* 20 C.F.R. § 404.1520a(c)(4); Listing 12.00C1-3. The last area—repeated episodes of decompensation, each of extended duration—means three episodes within one year or an average of one every four months, each lasting at least two weeks. *See* Listing 12.00C4.

Listing 12.06 for anxiety-related disorders is met if an individual meets or medically equals the A and B criteria or the A and C criteria. Listing 12.06. Plaintiff argues that he meets or medically equals the A and B criteria. With respect to the A criteria, plaintiff argues that he has recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress. *See* Listing 12.06A5. As to B criteria, he again argues that he has marked difficulties in maintaining social functioning and marked difficulties in maintaining concentration, persistence, or pace. *See* Listing 12.06B2, 3. As with Listing 12.04, the C criteria, which require a disorder specified in the A criteria resulting in the complete inability to function outside the area of the home, are not at issue because plaintiff does not allege that that he satisfies them.

In her decision, the ALJ found that plaintiff did not meet or medically equal Listings 12.04 and 12.06 because he did not satisfy the B criteria or the C criteria, although, as indicated, the C criteria are not at issue. The ALJ explained her ruling on the relevant B criteria, in part, as follows:

> In social functioning, the claimant has moderate difficulties. As a result of the robbery, the claimant did not like to be around a lot of people, he was irritable, intimidated by people, he had anxiety, and had begun being verbally aggressive to the point that his wife was scared of him.
>
> With regard to concentration, persistence or pace, the claimant has moderate difficulties. The evidence showed the claimant was forgetful, had trouble focusing due to anxiety, and frequently used marijuana.

Tr. 15 ¶ 4.

The ALJ's subsequent extended review and analysis of the medical and other evidence makes clear why she did not find plaintiff to be more limited in social functioning or concentration, persistence, or pace.[3] The ALJ found in relevant part:

---

[3] The fact that the reasons underlying the ALJ's listing determination are not all set out at step three of the sequential analysis does not constitute legal error since the decision read as a whole makes them clear. *See, e.g., Smith v. Astrue*, No. 11-1574, 2011 WL 6188731, at *1 (4th Cir. 14 Dec. 2011); *Lydia v. Astrue*, No. 2:11–1453–DCN–

The above-summarized evidence showed the claimant had a history of PTSD, bipolar disorder, and marijuana dependence. The claimant had been hospitalized a couple times, he attended regular treatment, and the record showed when he was compliant with his medication he had a better mood, less anxiety, and more energy. During both hospitalizations, once he was medicated, his symptoms improved. On his second hospitalization, the claimant admitted he had not been taking his medications due to weight gain and drowsiness. The evidence showed he was taught coping strategies and when discharged on both occasions, his GAF[4] scores had dramatically improved [from 25 to 85 and 30 to 70, respectively (Tr. 17 ¶ 5; 18 ¶ 5)] from the time of admittance; on discharge, he was found with minimal symptoms, good functioning in all areas, and generally functioning pretty well with meaningful relationships. The medical record also showed the claimant admitted that the Cymbalta helped quite a bit and he felt a little groggy on the medication but his mood was laid back. The evidence

---

BHH, 2012 WL 3304107, at *5 (D.S.C. 25 Jul. 2012) ("This sort of deconstruction of the ALJ's decisions is not useful. The ALJ's decision must be read as a whole."), *rep. and recommendation adopted by* 2012 WL 3308108 (13 Aug. 2012); *Finley v. Astrue*, No. 5:08–CV–209–D(1), 2009 WL 2489264, at *5 (E.D.N.C. 8 Jul. 2009) ("[T]he ALJ's decision may appropriately be read 'as a whole.'" (quoting *Jones v. Barnhart*, 364 F.3d 501, 504–05 (3rd Cir. 2004))), *mem. and recommendation accepted by* 2009 WL 2489264, at *1 (13 Aug. 2009).

[4] The GAF (*i.e.*, Global Assessment of Functioning) scale measures a person's overall psychological, social, and occupational functioning. Am. Psych. Assn., *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000) ("DSM–IV–TR"). Selected GAF scores have the following meanings:

> 90-81 Absent or minimal symptoms (e.g., mild anxiety before an exam), good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns (e.g., an occasional argument with family members).
>
> 80–71 If symptoms are present they are transient and expectable reactions to psychosocial stressors; no more than slight impairment in social, occupational, or school functioning.
>
> 70–61 Some mild symptoms OR some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships.
>
> 60–51 Moderate symptoms OR moderate difficulty in social, occupational, or school functioning in social, occupational, or school functioning.
>
> 50–41 Serious symptoms OR any serious impairment in social, occupational, or school functioning.
>
> 40–31 Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work . . . .
>
> 30-21 Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends).

DSM–IV–TR 34.

consistently showed the claimant's conditions and symptoms improved with treatment and medication, and this was consistent with the claimant's mother's testimony that the claimant improved with treatment, but he was . . . [not] yet back to normal. Therefore, the objective [evidence] showed the claimant was not yet back to "normal," but he was functioning. As for his daily activities, the claimant was able to cook, clean, and bathe with reminders, and he was also able to watch his children even when he did not feel up to it, and this task of watching children can be very emotionally and physically demanding. Furthermore, in 2011, the claimant had been referred to vocational rehabilitation in an effort to assist the claimant back into the workforce. Based on the aforementioned evidence, the undersigned finds the claimant is not as limited in his abilities as alleged, and he is not disabled and precluded from work activity.

Tr. 19 ¶ 5.

The ALJ's analysis of the opinion evidence provides further insight into her determination on the B criteria of social functioning and concentration, persistence, or pace. The ALJ summarized the opinions of these psychologists as follows:

> As for the opinion evidence, [Gary Bachara, Ph.D.] opined [on 22 June 2010] the claimant was able to understand, retain, and follow instructions. He could perform simple task and he got along with people that knew him fairly well. On August 3, 2010, Henry Perkins, Ph.D., stated the claimant was able to relate appropriately if interpersonal demands were limited, adapt to routine changes and demands of simple work activity, and he was able to sustain simple, routine, repetitive work activities that were not highly public in nature. (Ex. 2F, 2A).
>
> Richard Cyr-McMillon, Ph.D., opined on January 21, 2011, the claimant had some deficits in sustained concentration and pace but the claimant was able to sustain sufficient attention to complete simple routine tasks for a two-hour period at a non-production pace and complete a normal workweek and make simple work related decisions. The claimant was able to relate appropriately if interpersonal demands were limited and only casual public contact. Dr. Cyr-McMillon stated the claimant had some difficulty adapting to changes in the workplace, but he could avoid hazards and should be able to adapt to changes associated with the performance of simple tasks and function adequately in a stable work assignment in a position that was not highly production oriented or socially demanding. Furthermore, the claimant retained the capacity to perform simple routine repetitive tasks in a low stress setting with limited public contact due to posttraumatic stress symptoms.

Tr. 19-20 ¶ 5; *see also* Tr. 66-74 (Dr. Perkin's Rep.), 76-86 (Dr. Cyr-McMillon's rep.), 272-75 (Dr. Bachara's rep.).

Notably, like the ALJ, Dr. Cyr-McMillon found plaintiff to have moderate difficulties in both social functioning and concentration, persistence, or pace. Tr. 80. Dr. Perkins agreed with respect to social functioning, but found plaintiff had only mild difficulties regarding concentration, persistence, or pace. Tr. 69.

The ALJ gave the psychologists' opinions "significant weight." Tr. 20 ¶ 5. She explained her assessment of this evidence as follows:

> The medical records showed the claimant was able to interact with people on a limited level. He had been able to engage in group therapy as an active participant, and he interacted well with his counselors. The claimant would have been unable to work in a production-oriented environment due to his anxiety, but he was able to follow instructions and perform simple tasks as indicated by testimony and the medical records that showed his mother often reminded him to perform daily tasks. There was no indication that he needed any additional assistance in completing the tasks once it was delegated to him. The trend with the claimant was to keep tasks as simple as possible to avoid anxiety and irritability. (Ex. 4A).

Tr. 20 ¶ 5. The court finds this explanation conforms to the applicable legal standards and is supported by substantial evidence. *See* 20 C.F.R. § 404.1527(c); Soc. Sec. R. 96-6p, 1996 WL 374180 (2 July 1996).

In support of his argument that his difficulties in social functioning and concentration, persistence, or pace were at the marked level, plaintiff states in cursory fashion the following:

> Mr. Pulley has sought psychiatric treatment since he was the victim of a robbery in April 2009. He has been diagnosed with post-traumatic stress disorder and bi-polar disorder. He has exhibited mood swings, depressed mood, intrusive recollections of the robbery, paranoia, and suicidal ideations. As a result he had a complete breakdown in his relationship with his spouse and other family members. Mr. Pulley also has difficulty being in crowds.

(Pl.'s Mem. 9). It is apparent from the ALJ's decision that she considered all these facts. Moreover, these facts do not mandate a finding of marked difficulties in social functioning or concentration, persistence, or pace, particularly when considered with the other evidence of

record, as they must be. To the extent that plaintiff is relying on his own allegations about the severity of the symptoms he cites, the ALJ properly found such allegations not fully credible, as discussed in the next session.

The court concludes that the ALJ's determination that plaintiff did not meet or medically equal the B criteria and therefore that he did not meet or medically equal Listings 12.04 or 12.06 is supported by substantial evidence and based on the proper legal standards. Plaintiff's challenge to the ALJ's listing determination should accordingly be rejected.

### D. ALJ's Assessment of Plaintiff's Credibility

At the hearing, plaintiff testified at length regarding limitations he contends are imposed by his impairments. Tr. 28-51. The ALJ reviews this testimony in her decision. Tr. 16-17 ¶ 5. Plaintiff allegations are, of course, also reflected in the medial records and other evidence. The ALJ found plaintiff's allegations of the limitations arising from his impairments not fully credible. Tr. 17 ¶ 5; 19 ¶ 5. Plaintiff argues that this determination is erroneous, but the court finds no error.

The ALJ's assessment of a claimant's credibility involves a two-step process. Soc. Sec. Ruling 96–7p, 1996 WL 374186, at *2 (2 July 1996); *accord Craig v. Chafer*, 76 F.3d 585, 589 (4th Cir. 1996). First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. Soc. Sec. Ruling 96–7p, 1996 WL 374186, at *2. Next, the ALJ must evaluate plaintiff's statements concerning those symptoms. *Id.*; *see also* 20 C.F.R. § 404.1529 (setting out factors in evaluation of a claimant's pain and other symptoms). If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "supported by the evidence." Soc. Sec. Ruling 96–7p, 1996 WL 374186, at *2, 4; *Jonson v. Colvin*, No. 12cvl742, 2013 WL 1314781, at *7

(W.D. Pa. 28 Mar. 2013) ("If an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision."); *accord Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006).

In assessing plaintiff's allegations, the ALJ made the step-one finding that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 17 ¶ 5. At the second step of the credibility assessment, the ALJ found that plaintiff's allegations were not fully credible. Tr. 17 ¶ 5. She stated that "the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . [RFC] assessment." Tr. 17 ¶ 5. She also stated that he "cannot find [plaintiff's] allegation that she was unable to perform all work activity prior to the last date insured to be credible." Tr. 26 ¶ 5.

The ALJ provided specific reasons for her credibility determination, previously quoted at pages 10-11, above, in connection with the ALJ's listing determination. Tr. 15 ¶ 5. Again, she concluded her explanation by stating, "Based on the aforementioned evidence, the undersigned finds the claimant is not as limited in his abilities as alleged, and he is not disabled and precluded from work activity." Tr. 19 ¶ 5. The opinion evidence discussed above provides further support for the ALJ's credibility determination.

It is clear that the ALJ did not completely discount plaintiff's allegations. Her RFC determination includes numerous limitations responsive to his alleged limitations, as set out above. Tr. 16 ¶ 5.

The court concludes that the ALJ's determination of plaintiff's credibility was based on proper legal standards and supported by substantial evidence. This remaining challenge to the ALJ's decision should accordingly be rejected.

## III. CONCLUSION

After careful consideration of the ALJ's decision and the record in this case, the court concludes that the decision is supported by substantial evidence of record and based on proper legal standards.  IT IS THEREFORE RECOMMENDED that the Commissioner's motion (D.E. 25) for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 20) for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until 30 June 2014 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.  Any response to objections shall be filed within 14 days after service of the objections on the responding party.

This, the 16th day of June 2014.

James E. Gates  
United States Magistrate Judge